IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16 CR 463-23 |
| ALONZO HORTA, | ) ) | Judge Virginia M. Kendall |
| Defendant. | ) ) | |

### AMENDED DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the Defendant, Alonzo Horta, by and through his attorneys, Keith Spielfogel and James Graham, and submits the following sentencing memorandum:

Counsel is certain the Court is well familiar with the case law regarding the application of the factors set forth in 18 U.S.C. 3553(a) affording it great discretion in determining what constitutes a fair and just sentence in the case of Alonzo Horta. For that reason we will turn our attention directly to a discussion of the factors contained in 3553(a) and to additional factors present in this case that we believe the court should consider in arriving at its sentencing decision.

**3553. Imposition of a sentence**

**(a) Factors to be considered in imposing a sentence.**

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed shall consider—

1

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

a. The offense

Alonzo Horta has pled guilty to Count One of the indictment charging him with engaging in a RICO Conspiracy. A conspiracy he joined at the age of 13. This Honorable Court presided over pre-trial motions, a month-and-a-half trial of co-defendants, and numerous post-trial proceedings in this case. It is therefore not necessary to inform the court of the structure and activities of the Latin Kings that Mr. Horta has fully acknowledged being a part of in his plea agreement.

The plea agreement also sets forth on pages 8-9 the facts relevant to the murder of Alfonso Calderon. Alonzo Horta fired the shots that killed Mr. Calderon as part of the years long rivalry between the Latin Kings and the Spanish Vice Lords. A rivalry he now recognizes as extremely harmful to everyone concerned and to society as a whole.

b. History and characteristics of the defendant

1. History

As the court is aware, this case was indicted as a potential death penalty case. As a result of the death eligible charge, the defense was authorized to obtain the services of a mitigation specialist. Through her organization's work and the work of counsel, the defense was able to develop a comprehensive background of Alonzo Horta's life. The following is a summary of that background:

Alonzo Horta was born on April 27, 1997. He was 19 at the time of the Calderon shooting. He is the third of Ann Marie and Gabriel Horta, Sr's, four children. He has two older brothers, Gabriel, Jr. and Armando, and a younger sister, Selema.

Ann Marie and Gabriel, Sr., met when Ann Marie was 13 and Gabriel was 15. They dated for five years and married in 1992. They lived together for 23 years. In 2015, Ann Marie moved to a safer neighborhood in Indiana for her children.

Until his mother moved to Indiana, the family lived in a small two flat building on the southeast side of Chicago. Alonzo's paternal grandmother lived on the second floor and Alonzo's family lived on the 900-square-foot first floor. The apartment had one bathroom. The neighborhood was extremely run down. Abandoned buildings and violence permeated the area. Ann Marie and Gabriel, Sr., did their best to protect their children from the violence surrounding them and their family. Despite their efforts, the family did not escape the violence.

As a young child Alonzo witnessed and was subjected to regular physical danger. When he was seven he was at a wedding with his family. In the middle of the wedding someone shot his uncle in the arm as Alonzo was busy gathering stones from the tables' centerpieces.

When he was nine or ten someone opened a fire hydrant on Alonzo's block. A group of children played in the water. Shots rang out, and Alonzo ran home.

Alonzo witnessed neighborhood shootings and was taught to stay away from the windows when he heard gunshots and to run home when he was outside and heard shots. When he was at football practice he, on several occasions, "dropped for cover" when gunshots rang out. He learned at a young age which streets he could and couldn't walk down.

When he was thirteen Alonzo witnessed his father get into an argument with a man over a parking space. A fight ensued and the other man put Gabriel in a choke-hold. Alonzo saw that the man also had a gun. Alonzo picked up a snow shovel and hit

the person choking his father. The other person turned out to be an off duty Chicago Police Officer. Both Gabriel and Alonzo were arrested. Alonzo went into juvenile detention. Gabriel sued the police department. The city settled the case for $15,000.[1]

Ann Marie Horta saw the constant violence in the neighborhood and the kids hanging out on the corners on the southeast side. She simply did not have the financial ability to leave the neighborhood until 2015 when Alonzo was 18. By then Alonzo had already described symptoms that are associated with trauma. A 2013 psychological screening Alonzo received in juvenile detention reported trouble sleeping and concentrating, that he suffered very bad headaches, was constantly nervous and anxious, and used drugs and alcohol to cope with these stresses and to escape feelings of unworthiness.

REDACTED

Alonzo struggled in school as well as in the neighborhood and he exhibited significant adaptive deficits.[2] Beginning in fourth grade he received "C"s and "D"s in his major subjects. Those grades headed downward beginning in fifth grade. By his freshman year in high school he was receiving straight "F"s. Alonzo simply could not do the work. He believes he has a learning disability and he knows he is unable to concentrate for any period of time. He was suspended on several occasions for fighting and by tenth grade he left school.

Not surprisingly for a young boy growing up in his neighborhood, Alonzo

---

[1]) It should be noted that this incident is what is referred to in paragraph 61 of the PSR and is accorded one criminal history point. It is that point that elevated Horta's Criminal History Category to 2 from 1.

have run-ins with the law. As a juvenile he was arrested for possessing alcohol, possessing cannabis, vandalism, and for two possession of gun charges. Since turning seventeen he has a reckless conduct and a misdemeanor drug arrest.

## 2. Characteristics

Alonzo Horta had not spent any significant period in adult custody prior to being arrested in this case. It did not take him long once he was housed in the MCC to realize that his friends on the street were anything but his real "family" as they had portrayed themselves to be.

Alonzo has always been a present and positive figure in caring for his two children Aryana and Angelo ages, 3 and 5. Letter after letter that the court has received on Alonzo's behalf attest to that fact. Alma Floriano tells the court how Alonzo was there every minute during the birth of his premature daughter, Ayana. How he remained there before going into custody and how he is present through visits and daily phone calls since being in custody. The mother of his son, Tiffany Alfonso, writes about his love for his children and how he has always gone "above and beyond" in his pursuit of caring for them.

Alonzo's brothers and sister relate how Alonzo is able to lift up other members of the family. How he is the one who always wants to know how they are doing and really listens when they tell him. He brings the family together and is always looking with optimism to the future. Perhaps nothing better exemplifies his love for his children and family than the fact that Alonzo has been able to bring Alma and Tiffany together in order that his two children grow up sharing their lives with each other. On at least a weekly basis the two children get together at one of their mother's homes or, more often than not, at Alonzo's mother's home. The children are well on the way to forming the

bond Alonzo wishes for them.

Almost immediately upon entering the MCC, Alonzo saw what he needed to do to move on with his life and to set an example for his children. As opposed to bemoaning his present situation, he quickly began focusing on his future. He's taken and continues to take several classes to better himself. He is working on obtaining his GED and will surely do so. Certificates and records are attached from his Pre-Math, Basic Cognitive Skills Group, Inside Out Dad Parenting Class, Budgeting Class, Life of Christ Basic Bible Study Course, Food Service Course, Who Are You Course, and Unit Paint Orderly project. See attached Exhibits A - H.

Alonzo has consistently requested that counsel attempt to have his sentencing date take place as early as possible given the limitations imposed by Covid 19. The reason for his desire for a prompt sentencing is that he is aware there will be many more opportunities provided to him to improve himself through education classes, Bible classes, and vocational training programs once he is in the Bureau of Prisons.

**(2) the need for the sentence imposed--**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
**(B) to afford adequate deterrence to criminal conduct;**
**(C) to protect the public from further crimes of the defendant; and**
**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The serious nature of the offense cannot be minimized. No attempt to do so has ever been made by Mr. Horta and no attempt to do so will be made here. The plea agreement reflects that seriousness. It requires that Mr. Horta spend a significant portion of his life in custody for his actions. He must receive a minimum sentence of

twenty-five years. Clearly for that period of time he will not be a threat to the public. While in custody he will take advantage of every opportunity to better himself and to provide guidance to his children in an effort to assure they do not follow the path he pursued as a teenager. Simply put, the person who will emerge from prison years from now will be a different person than the one who went into custody over two years ago. (See Section on Age below).

### (3) the kinds of sentences available;

The plea agreement calls for a sentence of between 25-35 years.

### (4) the advisory guideline range;

The agreed offense level is 40. The defense believes the Criminal History Category is 1, as stated in the plea agreement. Probation has the Category as 2. If the court finds the Criminal History Category to be 1, the guideline sentencing range is 292-365 months. If it is found to be Category 2, the range is 324-405 months.

### (5) any pertinent policy statements issued by the Sentencing Commission;

None.

### (7) the need to provide restitution to any victims of the offense.

Not applicable.

## II. Additional factors

### a) Age

**Alonzo Horta was 19 at the time of the charged VICAR Murder Count**

The Supreme Court in the case of *Roper v. Simmons*, 543 U.S. 551 (2005) was presented with the issue of whether a person under the age of 18 could be sentenced to death. While Alonzo Horta is not facing the death penalty and while he was 19 at the time of the Calderon murder, the pronouncements of the court on the issue of the

mental development of a teenager are instructive as to why youth should be considered by a sentencing court in determining a fair and just sentence.

The Court in *Roper* relied on research presented in the case that revealed factors mitigating against the death penalty. Those same factors apply to the sentence to be imposed upon Horta. The Court noted the following three factors: (1)the lack of maturity and an underdeveloped sense of responsibility is found in youth more often than in adults and is more understandable among the young; (2) juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and (3) the character of a juvenile is not as well formed as that of an adult.

The *Roper* Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." In fact research explains that a child's brain capacity for self-regulatory competency is not complete until their mid-20s. In fact, the brain of 18-21 year-olds are not mature in the three areas that impact self-control and emotional regulation: the amygdala, the prefrontal cortex, and the ventral striatum. Brain scans illustrate that the amount of gray matter in the brain does not peak until mid-20s. Only in the late 20s do people's capacity to integrate higher thought processing finally peak.[3]

The *Roper* Court, importantly, gave weight to the fact that:

"the relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside…(citations omitted) For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood." *Roper* at 571.

---

[3]) Nitin Gogtay et al., Dynamic Mapping of Human Cortical Development During Childhood Through Early Adulthood, 101:21 PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCE 8174 (2004).

In his letter to the court, Lorenzo Mendoza tells the court how he grew up on streets similar to the streets Alonzo grew up on. He relates how the presence of gangs and the struggles and challenges of youth in that environment consume many young people. He wrote of being fortunate enough to not get into so much trouble that he was able to serve 26 years of active service in the military. He has know Alonzo from the time Alonzo was born. In addition to describing the kind of person he knows Alonzo to be, he points out that young people sometimes need to experience a wake-up call and that he believes what has occurred in this case has provided that call to Alonzo. He, along with several others, writes about the need for a second chance.

In Alonzo Horta's case the second chance he is asking for is for the chance to return to his children's lives and to his family after serving a twenty-five year sentence.

Respectfully Submitted,
/s/Keith Spielfogel
190 S. LaSalle Street
Suite 520
Chicago, Illinois 60603
(312) 236-6021
spielfogel@sbcglobal.net
IL 2689537


/s/James Graham
53 W. Jackson Blvd.
Suite 703
Chicago, IL 60604
(312) 922-3777
jgraham.law@me.com
IL 6184279

## CERTIFICATE OF SERVICE

I, James A. Graham, an attorney, certify that I shall cause to be served a copy of Defendant's "**AMENDED DEFENDANT'S SENTENCING MEMORANDUM**" upon the following individual(s) electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this 31st day of August, 2020.

TO:
John D. Cooke
Grayson Walker
Ashley Chung
Asst. United States Attorney
219 S. Dearborn St.
5th Floor, North
Chicago, Illinois 60604

Jonathan S. Bedi
Dena M. Singer
Bedi & Singer LLP
910 West Van Buren, 2S
Chicago, Illinois 60607

John L. Sullivan
John L. Sullivan Law Office
1429 Lehigh Ave
Apt. B1
Glenview, IL 60026

ECF Service List

s/ *Keith Spielfogel*
Attorney for ALONZO HORTA

s/ *James A. Graham*
Attorney for ALONZO HORTA

Keith Spielfogel
Law Office of Keith Spielfogel
190 S. LaSalle Street
Suite 520
Chicago, Illinois 60603
(312) 236-6021
email address: spielfogel@sbcglobal.net

James A. Graham (ARDC 6184279)
Attorney at Law
53 W. Jackson Blvd.
Suite 703
Chicago, Illinois 60604
(312) 922-3777
Facsimile: (312) 663-5386
e-mail address: jagraham.law@me.com

10